UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ATLANTIC SPECIALTY INSURANCE
COMPANY,

       Plaintiff,

v.                          **MEMORANDUM OF LAW & ORDER**
                           Civil File No. 20-2283 (MJD/HB)

LEXINGTON INSURANCE COMPANY
and BCS INSURANCE COMPANY,

       Defendants.

Emmitt DuBose, III, Greta Ayn Matzen, Matthew J. Gollinger, and Sara Lindsey Menton, Intact U.S. Coverage Litigation Group, Counsel for Plaintiff.

Brent A. Lorentz and David P. Pearson, Winthrop & Weinstine, PA, Counsel for Defendant Lexington Insurance Company.

Andrea E. Reisbord, Bryce Daniel Riddle, and Janine M. Loetscher, Bassford Remele, Counsel for Defendant BCS Insurance Company.

**I.    INTRODUCTION**

This matter is before the Court on Defendant BCS Insurance Company's Motion to Transfer Venue. [Docket No. 34] For the reasons that follow, the Court grants the motion to transfer this case to the United States District Court for the Western District of Washington.

1

## II. BACKGROUND

### A. Factual Background

#### 1. The Parties

Plaintiff Atlantic Specialty Insurance Company ("ASIC") is a New York corporation with its principal place of business in Minnesota. (Compl. ¶ 12.)

Defendant BCS Insurance Company ("BCS") is an Ohio corporation with its principal place of business in Illinois. (Compl. ¶ 14.)

Defendant Lexington Insurance Company ("Lexington") is a Delaware corporation with its principal place of business in Massachusetts. (Compl. ¶ 13.) All three parties are insurance companies authorized to do business in Minnesota. (Id. ¶¶ 12-14.)

#### 2. The Insurance Policies

##### a) ASIC Commercial Policies

For the policy period October 1, 2013 to October 1, 2014, ASIC issued a Commercial General Liability policy to non-party Premera Blue Cross ("Premera") with a $1 million liability limit ("ASIC Primary Policy") (Compl. ¶¶ 32-33, 40) and an Umbrella policy that followed form to the ASIC Primary Policy with a $15 million liability limit ("ASIC Umbrella Policy") (collectively, "ASIC Policies") (id. ¶ 41).

2

The ASIC Primary Policy requires ASIC to pay those sums Premera becomes legally obligated to pay as damages because of "bodily injury," "property damage" or "personal and advertising injury" to which the insurance applies. (Id. ¶ 33.) The insurance applies to "bodily injury" and "property damage" caused by an "occurrence" during the policy period, and to "personal and advertising injury" caused by an "offense" arising out of Premera's business committed in the "'coverage territory' during the policy period." (Id.) "Personal and advertising injury" includes "bodily injury" arising from "[o]ral or written publication of material that violates a person's right of privacy" (id. ¶ 37) but excludes recording and distribution of material or information in violation of the law (id. ¶ 38).

### b) Excess E&O Policies

For the policy period October 1, 2014 to October 1, 2015, non-party Ironshore issued a Managed Care Errors and Omissions Liability Policy to Premera, which affords coverage to Premera on a claims-made and reported basis and has a $10 million liability limit, subject to a $1.5 million self-insured retention (the "Ironshore E&O Policy"). (Compl. ¶ 46.) The Ironshore E&O Policy affords Premera coverage for errors and omissions in the "failure to

3

maintain confidentiality of information regarding Medical Services or information obtained in the provision of Managed Care Service and limiting the release or use of such information in conformance with the requirements of the law." (Comp. ¶¶ 4, 49, 77.) Managed Care Service is defined by endorsement of the Ironshore E&O Policy to include Premera's "creation, operation, maintenance and use of [Premera's] website or network." (Compl. ¶ 51.)

Defendants argue that Ironshore mistakenly included Endorsement 6 in the E&O Policy that it provided to Premera and, so, the aforementioned coverage regarding the release of confidential information from Premera's network did not, in fact, apply.

For the policy period October 1, 2014 to October 1, 2015, on a claims-made-and-reported basis, Defendant Lexington issued an excess E&O policy to Premera with a $10 million liability limit that applies in excess of the Ironshore $10 million limit ("Lexington Policy"). (Compl. ¶¶ 53, 55, 58.) With certain exceptions, the Lexington Policy follows form to the Ironshore E&O Policy. (Id. ¶ 54.)

For the policy period October 1, 2014 to October 1, 2015, Defendant BCS issued an excess E&O policy to Premera with a $10 million limit in excess of the

4

underlying Lexington and Ironshore limits of liability ("BCS Policy"). (Compl. ¶ 60.) With certain exceptions, the BCS Policy follows form to the Ironshore E&O Policy. (Id. ¶ 61.)

### 3. Premera Data Breach

As a result of malware installed by hackers on Premera's systems in May 2014, Premera suffered a data and security breach of its computer network systems, which lasted through March 2015 and affected approximately 10 million individuals. (Compl. ¶¶ 19, 23.)

#### a) MDL Action

In response to the data breach, a nationwide class action and alternative state class actions were filed and consolidated into an MDL venued in the District of Oregon, In re: Premera Blue Cross Customer Data Security Breach Litigation, Case No. 3:15-md-2633 (D. Or.) ("MDL Action"). (Compl. ¶¶ 1, 19-21.) The MDL Action asserted various causes of action against Premera, including negligence for failure to protect private personal information. (Id. ¶ 25.)

#### b) Attorney General Actions

Also in response to the data breach, thirty state Attorneys General initiated lawsuits against Premera for failing to safeguard private data compromised by the breach ("AG Actions). (Compl. ¶¶ 28-29.)

### c) Premera's Tender of the MDL and AG Actions

Premera tendered the defense and indemnification of the MDL Action and the AG Actions to ASIC, Ironshore, and Lexington. (Compl. ¶ 63.)

In February 2019, Premera and its insurers agreed to settle the MDL Action. (Compl. ¶ 64.) In March 2020, the District of Oregon granted final approval of the MDL Action settlement, under which Premera contributed $32 million to a settlement fund. (Compl. ¶¶ 26-27.) ASIC contributed $12.2 million to the MDL settlement pursuant to the ASIC Policies, subject to a reservation of rights to subrogate against Lexington and BCS. (Id. ¶ 64.) Ironshore contributed its $10 million policy limit, and Lexington refused to contribute to the settlement. (Id. ¶ 65.)

Premera settled the AG Actions in July 2019 for $10 million. (Compl. ¶ 66.) ASIC contributed $2.9 million to the AG Action settlement, pursuant to a reservation of ASIC's right to later subrogate against Lexington and BCS. (Id. ¶ 67.) Lexington contributed $2.7 million to the AG Settlement. (Id. ¶ 68.)

### 4. Washington Action

In 2015, in response to Premera's tender of the MDL Action, ASIC sued Premera in the United States District Court for the Western District of Washington seeking a declaration that ASIC had no duty to defend or indemnify Premera in the MDL Action under the ASIC Policies. Atlantic Specialty Insurance Company v. Premera Blue Cross, No. 2:15-CV-01927 TSZ (W.D. Wash.) ("Washington Acton"). (See First Loetscher Decl., Ex. A, Washington Action Am. Compl.)

ASIC moved for summary judgment on the duty to defend in the Washington Litigation on the grounds that coverage for "personal and advertising injury" did not apply because the MDL plaintiffs did not allege that Premera published their private personal information or that their private information was published to the public at large. (First Loetscher Decl., Ex. B, Wash. SJ Order at 7-15.) In the alternative, ASIC argued that, even if the plaintiffs had alleged a "personal and advertising injury," coverage was precluded by the exclusion for damages arising from any act or omission in violation of certain statutes. (Id. at 15-17.)

On July 12, 2017, the District Court for the Western District of Washington denied ASIC's motion for summary judgment and ruled that ASIC owed a duty

7

to defend Premera against the MDL Action because "at least one claim asserted in the MDL matter, namely the third claim for negligence, is 'conceivably' covered [by the ASIC Policies]."  (Wash. SJ Order at 11.)  The court held that "[t]he negligence claim in the MDL matter alleges the requisite 'publication'" to assert damages because of a "personal and advertising injury" because, "[a]lthough Premera presumably did not intend to expose the class members' confidential information to hackers, it did so by allegedly failing to implement adequate security measures, and the private data has indisputably been made available to an unknown number of individuals."  (Id. at 14 (footnote omitted).)  The court also rejected ASIC's argument that, to the extent the MDL plaintiffs asserted HIPAA violations, the violation-of-the law exclusion applied to the negligence claim, because HIPAA is not the type of statute within the violation-of-the law exclusion's intended scope.  (Id. at 16-17.)  The order did not address ASIC's duty to indemnify.  Nor did it address allocation of coverage among Premera's other insurers.

On August 31, 2017, the Washington court stayed further proceedings pending resolution of the MDL Action.  (Loetscher Decl., Ex. C.)  On June 15, 2020, after the MDL Action settled, the Washington court lifted the stay and

directed ASIC and Premera to file a status report addressing, among other things, "whether ASIC's declaratory judgment claim relating to indemnification has been resolved and can be dismissed with prejudice." (Loetscher Dec., Ex. D, Joint Status Report.) ASIC and Premera agreed that there was "no longer an issue as to ASIC's indemnity obligations for the MDL settlement, and that ASIC's claim for declaratory judgment regarding indemnification for the MDL may be dismissed with prejudice." (Id. at 2.) On July 20, 2020, the Washington court entered a final judgment and dismissed the Washington action in its entirety with prejudice. (First Loetscher Decl., Ex. E.)

### B. Procedural History

On November 5, 2020, ASIC filed a Complaint against BSC and Lexington in this Court asserting: Count 1: Declaratory Judgment – Lexington and BCS have a duty to indemnify Premera for the MDL Settlement and the AG Settlement; Count 2: Declaratory Judgment – ASIC had no duty to indemnify Premera for the MDL Settlement and the AG Settlement pursuant to the insuring agreements of the ASIC Primary Policy and the ASIC Umbrella Policy; Count 3: Declaratory Judgment – ASIC had no duty to indemnify Premera for the MDL Settlement or the AG Settlement pursuant to the exclusion for distribution of material in violation of law; Count 4: Declaratory Judgment – ASIC had no duty

to indemnify Premera for the MDL Settlement or the AG Settlement pursuant to the professional services exclusion; Count 5: ASIC had no duty to indemnify Premera for the MDL Settlement or the AG Settlement pursuant to the fines and penalties exclusion; and Count 6: Contractual and Equitable Subrogation. [Docket No. 1] ASIC seeks a declaration that Lexington and BCS had a duty to indemnify Premera for the payment of the MDL and AG settlements and that ASIC did not have a duty to indemnify Premera for payment of those settlements. ASIC seeks to have BCS and Lexington reimburse it for settlement payments it made on behalf of Premera for the MDL and AG settlements.

BCS has now filed a motion to transfer venue to the Western District of Washington. Lexington joins in BCS's motion for transfer. [Docket No. 41]

### III. DISCUSSION

#### A. Section 1404(a) Standard

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." Terra Int'l, Inc. v. Miss. Chem.

10

Corp., 119 F.3d 688, 695 (8th Cir. 1997). When considering a motion to transfer, the Court must consider three factors: "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." Id. at 691. However, "such determinations require a case-by-case evaluation of the particular circumstances at hand." Id.

B. **Whether the Western District of Washington Is a Proper Venue**

Venue is proper in the Western District of Washington under 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim occurred" in that district. This case arises out Plaintiff's and Defendants' issuance of insurance policies to a Washington-based entity, Premera, and a coverage dispute regarding a data breach arising out of Premera's allegedly inadequate data security protocols in Washington, which caused a data breach in Washington and affected primarily Washington residents. (See Second Loetscher Decl., Ex. E, MDL First Am. Consol. Compl. ¶ 115.) ASIC brings this action, in part, under a theory of equitable and contractual subrogation on behalf of Premera, which is headquartered and maintains its principal place of business in Washington.

C. **Convenience of the Parties**

The convenience of the parties factor weighs slightly against transfer. Litigating in Minnesota is more convenient for ASIC, with its principal place of business here. And neither Defendant is headquartered in Minnesota. However, all parties involved are large, sophisticated insurers with ample experience and resources to litigate in either forum. And Defendants view the Western District of Washington as more convenient for them given the location of key events, witnesses, and documents, and access to that court's subpoena power.

**D.     Convenience of the Witnesses**

The convenience of the witnesses weighs in favor of transfer.

ASIC's own employees and documents are located in Minnesota. However, when analyzing the convenience of the witnesses factor, "[t]he focus is on non-party witnesses since it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily in a foreign forum." Bae Sys. Land & Armaments L.P. v. Ibis Tek, LLC, 124 F. Supp. 3d 878, 885–86 (D. Minn. 2015) (citation omitted). ASIC identifies only one potential third-party witness who resides in Minnesota – Minnesota Attorney General Keith Ellison – and fails to explain why his testimony would be material, particularly given Minnesota's small share of the global AG settlement and lack of leadership role in the AG Actions. See Klatte v. Buckman, Buckman & Reid,

Inc., 995 F. Supp. 2d 951, 956 (D. Minn. 2014) (noting that a party must "specify clearly the key witnesses to be called and indicate what their testimony will entail") (citation omitted).

In contrast, Defendants have specified multiple key non-party witnesses who reside in Washington and have persuasively explained why their testimony is material. (See Matzen Decl., Ex. D, BCS Rule 26(a)(1) Initial Disclosures.) For example, it is likely that Premera and its representatives will be essential witnesses with material knowledge and documents regarding Premera's insurance program, the underlying claims and factual bases for the settlements ASIC claims Defendants should pay, and Premera's coverage negotiations and agreements related to the MDL and AG settlements. The Western District of Washington will have subpoena power over these witnesses, and that venue will be more convenient for them. Additionally, a majority of the key non-party witnesses reside on the west coast, such that the Western District of Washington will clearly be a more convenient venue.

E.  **Interests of Justice**

When analyzing the interests of justice, the Court considers:

(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6)

conflict of law issues, and (7) the advantages of having a local court determine questions of local law.

Terra Int'l, 119 F.3d at 696.

The interests of justice weigh in favor of transfer.

### 1. Judicial Economy

Judicial economy weighs in favor of transfer. The Western District of Washington has already presided over the Washington Action, which involved the same ASIC Policies, analyzed some of the policy language and related coverage issues, and was based on the same underlying occurrence and subsequent litigation at issue in this case. Although the summary judgment order in the Washington Action addressed only the duty to defend and not the duty to indemnify, there is still a risk of inconsistent interpretation of particular policy language in the ASIC Policies if the motion to transfer is denied. Additionally, Defendants assert a defense that Ironshore's Endorsement 6 was issued in error, which may be a reformation issue that would be litigated in the Western District of Washington. Defendants further point out that many key witnesses are attorneys and are likely to raise privilege objections or otherwise move to quash or limit subpoenas. Because many of these witnesses are located in Washington, the Western District of Washington will likely be called upon to

address discovery issues in this case regardless of where the case is venued.  In sum, transfer would promote judicial economy by having all related claims addressed in a single forum by a court already familiar with many of the relevant facts and issues.

### 2. Plaintiffs' Choice of Forum

As the plaintiff, ASIC's choice of forum in its home state is entitled to deference.  "Nonetheless, when the underlying events giving rise to the litigation did not occur in the forum, courts afford a plaintiff's choice of forum significantly less deference."  Oien v. Thompson, 824 F. Supp. 2d 898, 905 (D. Minn. 2010) (citation omitted).  Here, the underlying events giving rise to this litigation primarily occurred in Washington.  This dispute centers on insurance policies negotiated and issued in Washington, which are interpreted under Washington law; on litigation spawned by Premera's actions in Washington that led to a data breach in Washington, harming primarily Washington residents; and on the MDL and AG Actions that were negotiated and settled primarily in Washington and nearby states.

### 3. Comparative Costs to the Parties

All parties are sophisticated businesses with the ability to litigate effectively in either forum. However, given that the operative events primarily occurred in the Western District of Washington, with additional important events and witnesses tied to the nearby states of Oregon and California, and most of the relevant documents and witnesses are located in those states, the comparative costs to the parties of litigating in each forum weighs in favor of transfer to the Western District of Washington.

### 4. Ability to Enforce Judgment and Obstacles to a Fair Trial

The parties will be able to enforce a judgment and obtain a fair trial in either forum.

### 5. Choice of Law

ASIC does not dispute Defendants' claim that Washington law applies. "There is an appropriateness in holding trial in a diversity case in the venue that is at home with the state law that must govern the case." In re Apple, Inc., 602 F.3d 909, 915 (8th Cir. 2010) (citation omitted).

Weighing all of the above factors, the Court concludes that transfer to the Western District of Washington is warranted.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant BCS Insurance Company's Motion to Transfer Venue [Docket No. 34] is **GRANTED**.

2. This case is transferred to the United States District Court for the Western District of Washington.

Dated: April 30, 2021            s/Michael J. Davis
                                             Michael J. Davis
                                             United States District Court